UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| DELTA-T CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:09CV321–HEH |
| ) | |
| HARRIS THERMAL TRANSFER ) | |
| PRODUCTS, INC. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION
**(Granting Motion to Dismiss for Lack of Personal Jurisdiction and Denying Motion to Dismiss for Lack of Proper Venue and Motion to Transfer Venue)**

This case is before the Court on Defendant Harris Thermal Transfer Products, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction and Lack of Proper Venue, or in the alternative, Motion to Transfer Venue (Dkt. 3 & 4). Defendant argues that this Court lacks personal jurisdiction over it and that the Eastern District of Virginia is not a proper venue for this matter. In the alternative, Defendant moves that the case be transferred to the United States District Court for the District of Oregon.

The parties have filed memoranda of law and exhibits in support of their respective positions. Following oral argument on Thursday, August 3, 2009, the Court ruled from the bench that this Court lacked personal jurisdiction over the Defendant. The Court informed the parties that this written memorandum opinion would follow. For the reasons stated herein, the Court grants the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

## I.

Plaintiff, Delta-T Corporation ("Delta-T"), is a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business in Williamsburg, Virginia. Defendant, Harris Thermal Transfer Products, Inc. ("Harris"), is a corporation organized under the laws of the state of Oregon with its principal place of business in Newberg, Oregon. Defendant does not have, nor has it ever had, an office, employees, or property within the Commonwealth of Virginia. Defendant is not licensed to do business in Virginia, has no agent for service of process in Virginia, and has never paid taxes in Virginia.

The underlying case concerns the construction of a dry mill ethanol plant near Riga, Michigan. The owner of the project, Midwest Grain Processors, LLC, entered into an Engineering, Procurement, and Construction ("EPC") Contract with The Industrial Company ("TIC") for construction of the facility. Plaintiff Delta-T entered into a Joint Venture Agreement with TIC for fulfilment of the EPC Contract.

On October 11, 2005, an employee of Plaintiff sent two e-mail messages from Virginia to Defendant in Oregon at "sales@harristhermal.com" inviting Defendant to bid on a contract for construction of shell and heat tube exchangers for the Riga, Michigan plant. Defendant responded by submitting a bid from its Oregon headquarters to the Plaintiff in Virginia on December 2, 2005. Negotiations regarding the resulting contract took place over the phone while each party was operating from its respective home state.

On April 18, 2006, Plaintiff, as buyer, and Defendant, as seller, entered into an Engineered Equipment Purchase Order ("EEPO") for the design, manufacture, and supply of nineteen shell and tube heat exchangers to be delivered to the Michigan plant. Plaintiff signed the contract in Virginia, and Defendant signed the contract in Oregon.

The contract includes an arbitration clause requiring that any disputes between the parties, which cannot otherwise be resolved, be arbitrated in the state of Michigan. Ex. C to Pls's Opp'n ¶ 18. The contract also requires that "[t]he Purchase Order shall be governed by the law of the Project State [Michigan] ...." *Id.* ¶ 19(E).

Plaintiff alleges that Defendant failed to manufacture several evaporators according to the contract, subsequent change orders, and other contract documents. Plaintiff brought this action, alleging that Defendant's actions constitute a breach of contract between the two parties and a breach of its warranties in the contract.

On July 9, 2009, Defendant Harris filed the immediate motion, urging this Court to dismiss Plaintiff's claims for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## II.

When personal jurisdiction is challenged, as it is here, by a Rule 12(b)(2) motion to dismiss, the burden is on the plaintiff "to prove grounds for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). If a plaintiff makes the requisite showing, the defendants then bear the burden of presenting

3

a "compelling case" that, for other reasons, the exercise of jurisdiction would be so unfair as to violate due process. *Burger King v. Rudzewicz*, 471 U.S. 462, 477-78 (1985). For the purposes of a motion to dismiss, the reviewing court may presume that any uncontradicted evidence submitted by either party is true. *See id.*

As the Fourth Circuit has recognized, an analysis of personal jurisdiction is normally a two-step inquiry consisting of both statutory and constitutional components. *Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982). This Court may only exercise personal jurisdiction over a non-resident defendant if such jurisdiction is authorized by Virginia's long-arm statute (Va. Code Ann. § 8.01-328.1) and such exercise or jurisdiction is consistent with the due process clause of the Fourteenth Amendment. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (2009).

Virginia's long arm statute provides that: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's ... [t]ransacting any business in this Commonwealth ...." Va. Code Ann. § 8.01-328.1(A)(1). The Fourth Circuit has recognized that "Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause ...." *Consulting Eng'rs*, 561 F.3d at 277. It is appropriate, then, for this Court to begin its analysis by examining whether the constitutional standard is met. *See id.*

4

To satisfy the due process requirement of the Constitution, the defendant must have sufficient "minimum contacts" with the Commonwealth of Virginia such that the exercise of jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (citation and quotation omitted). "Minimum contacts" are present if the defendant "purposefully directed his activities at the residents of the forum" and the plaintiff's cause of action "arise[s] out of" those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) (citation and quotation omitted).

The Fourth Circuit has laid out a three-part test to determine whether exercise of specific personal jurisdiction is appropriate. *Id* at 278. This test requires the Court to focus on: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (quotations and citations omitted).

As to the first prong of this test, purposeful availment, there is no clear formula for determining what constitutes "purposeful availment," but the Fourth Circuit in *Consulting Eng'rs*, provided a number of factors for this Court to consider:

- whether the defendant maintains offices or agents in the forum state;
- whether the defendant owns property in the forum state;
- whether the defendant reached into the forum state to solicit or initiate business;
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state;
- whether the parties contractually agreed that the law of the forum state would govern disputes;
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;
- the nature, quality and extent of the parties' communications about the business being transacted; and
- whether the performance of contractual duties was to occur within the forum.

*Consulting Eng'rs*, 561 F.3d at 278 (citations omitted).

Defendant Harris Thermal does not have an office, agents, or property in Virginia, and did not reach into Virginia to solicit Plaintiff's business. Instead, Plaintiff initiated the contractual relationship by sending an email from Virginia to the Defendant in Oregon requesting Defendant to submit a bid for the contract, a factor that this Court can afford "special weight." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 n.17 (4th Cir. 2009).

The parties did not agree that Virginia law would govern the contract. In fact, the contract provided that the law of the project site, Michigan, would govern. There was also an arbitration clause requiring that any disputes the parties could not resolve between the two of them were to be arbitrated in Michigan. Additionally, the work of the contract was to be performed in Michigan, not Virginia. Defendant did not have any in-person contact with Plaintiff in Virginia

regarding either the negotiation or execution of the contract.

Defendant's other business activities in Virginia do not rise to the level of "significant" or "long-term." *Id.* Harris Thermal employees visited Plaintiff's headquarters in Virginia on two occasions for unrelated contracts. *Cf. Le Bleu v. Standard Capital Group, Inc.*, 11 Fed. App'x. 377 (4th Cir. 2001) (affirming a finding of no specific personal jurisdiction when defendant's employees visited the forum state on two occasions). Defendant and Plaintiff have worked together on five other projects, but none were located in Virginia, nor did they require Defendant to send employees to Virginia. Defendant has also sold products to another Virginia corporation, Ferguson, but this was a negligible part of Defendant's business activities, representing less than one-twentieth of a percent of Defendant's annual sales, and some of these sales were sent directly to other states.

Regarding this contract, Plaintiff, who has the burden of showing grounds for jurisdiction by a preponderance of the evidence, states that Defendant made "frequent and numerous communications and exchanges of information" with Plaintiff's employees in Virginia. The Plaintiff points to a number of contract-related activities *Plaintiff* undertook in Virginia, but these activities are not relevant to the question of what contacts *Defendant* made in Virginia. Collectively, the record reveals the converse, namely that Delta-T directed its activities into

Oregon and Michigan; as opposed to Harris Thermal directing its activities toward Virginia. *See Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 452 (2000).

Defendant's other contacts with Virginia are insufficient to provide the basis for a finding of specific personal jurisdiction. The Fourth Circuit's decision in *Diamond Healthcare* involved some factual similarities and is instructive. *Id.* In that case, plaintiff Diamond Healthcare, a Virginia corporation, brought suit against defendant HMH Partners, an Ohio Corporation, for breach of contract. *Id.* The Virginia plaintiff initiated the contract with the Ohio defendant. *Id.* at 451. During contractual negotiations, the parties never met in Virginia, but had several written and telephone exchanges between their offices. *Id.* Just as the obligations under the immediate case were to be performed in Michigan and governed by Michigan law, the contract in *Diamond Healthcare* "called for the obligations of both parties to be performed mainly in Ohio and to be governed by Ohio law." *Id.* at 452. The District Court granted Defendant's Motion to Dismiss for lack of personal jurisdiction, and the Fourth Circuit affirmed this decision. The Fourth Circuit found performance in another state coupled with a provision that the contract was governed by another state's law "inconsistent with [plaintiff's] assertion that [defendant] invoked the benefits and protections of Virginia law and with [plaintiff's] contention that [defendant] could reasonably anticipate being

8

haled into court in Virginia." *Id.* (citation and quotation omitted).

Careful consideration of the record in this case compels the conclusion that the Defendant did not purposefully avail itself of the privilege of conducting activities in the Commonwealth of Virginia. This Court's analysis "must focus on the nature, quality, and quantity of the contacts, as well as their relation to the forum state." *Consulting Eng'rs*, 561 F.3d at 279, n.4. The Court takes particular note that the Plaintiff initiated the contact with the Defendant, the contract was to be performed outside of Virginia, and the contract was governed by Michigan law. Defendant's contacts, alleged by Plaintiff, demonstrate minimal relation to the Commonwealth of Virginia and are clearly insufficient to warrant a finding of personal jurisdiction.

Having found that Plaintiff has failed to prove that the Defendant "purposefully availed itself of the privilege of conducting activities" in Virginia, the Court need not address the other elements of the test for personal jurisdiction. *Consulting Eng'rs*, 561 F.3d at 278.

### III.

The Court finds that it lacks personal jurisdiction over the Defendant and will grant Defendant's Motion to Dismiss. Discussion of Defendant's Motion for Lack of Proper Venue or Motion to Transfer Venue is unnecessary.

An appropriate Order will accompany this Memorandum Opinion.

                                                  /s/

                                   Henry E. Hudson
                                   United States District Judge

Date: Sep 4, 2009
Richmond, VA